IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JOSHUA LEE CLOSE, Individually and as Administrator of the ESTATE OF ANGELA MARIE PRICHARD, and COLTON HANCOCK, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BELLEVUE, IOWA, DENNIS SCHROEDER, RYAN KLOFT, and SHELBY MUTZL,<br><br>Defendants. | Case No. 2:24-cv-01012-CJW-KEM<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE AN AMENDED AND SUBSTITUTED COMPLAINT** |

COMES NOW the Plaintiffs, to submit this Brief in Support of their Rule 59(e) Motion to Alter or Amend Judgment and for Leave to File an Amended and Substituted Complaint, as follows:

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................2

ARGUMENT................................................................................................................2

I. THE COURT SHOULD SUBMIT CERTIFIED QUESTIONS TO THE IOWA SUPREME COURT REGARDING COUNT II - VIOLATION OF EXPRESS STATUTE……………………………………………………………………….7

II. THE COURT'S RULING SHOULD BE REASSESSED IN LIGHT OF FEDERAL RULE OF CIVIL PROCEDURE 9(b) AND NEWLY DISCOVERED EVIDENCE……………………………………………………………….

CONCLUSION...........................................................................................................16

**INTRODUCTION**

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to file a motion to alter or amend a judgment within 28 days after the entry of judgment. Rule 59(e) was adopted to make clear that the district court possesses the power "to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703, 207 L. Ed. 2d 58 (2020). Rule 59(e) motions are used to correct "manifest errors of law or fact, or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). The Motion for Leave to File the Attached Amended and Substituted Complaint is supported by Fed. R. Civ. Pr. 15(a)(2)("The court should freely give leave when justice so requires.").

**I.    THE COURT SHOULD SUBMIT CERTIFIED QUESTIONS TO THE IOWA SUPREME COURT REGARDING COUNT II - VIOLATION OF EXPRESS STATUTE**

The Court dismissed Plaintiffs' "Violation of Express Statutes" claim although the Iowa Supreme Court has never addressed the issue. When there are no cases directly on point from the state's highest court, it is the duty of the federal district court "to predict how the state's highest court would resolve that issue." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). Rather than this court's prediction being review by the Eighth Circuit Court of Appeals, making its own prediction on the issue, the more efficient way to resolve the dispute is to submit it directly to the Iowa Supreme Court.

Federal Courts should allow the Iowa Supreme Court to address issues of first impression under state law, particularly those dealing with Iowa Constitutional issues. In *Wagner v. Iowa and Spece*, Order on Motion to Dismiss, Case No. 3:10-cv-03007, R. Doc. 18 at 21, filed 07/29/2019, this court found, "[t]here is no controlling or persuasive authority

under Iowa law that answers the overarching question before the Court." This court reasoned in *Wagner*, as follows:

> The Court finds it appropriate to certify the questions set forth below to the Iowa Supreme Court under Iowa Code Section 684A.1 and Iowa Rules of Appellate Procedure 6.301-305. The Iowa Supreme Court has "discretion to answer certified questions that (1) [are] certified by a proper court, (2) present[ ] questions of Iowa law, (3) may be determinative of the cause pending in the certifying court, and (4) appear[ ] to the certifying court to have no controlling Iowa precedent." *Bd. of Water Works Trs. of City of Des Moines v. Sac Cty. Bd. of Supervisors*, 890 N.W.2d 50, 56 (Iowa 2017) (internal citations, quotation marks, and alteration omitted).

*Wagner v. Iowa and Spece*, Order on Motion to Dismiss, Case No. 3:10-cv-03007, R. Doc. 18 at 27, filed 07/29/2019.

In holding the Iowa Supreme Court would not find that Iowa Code § § 236.11 and/or 664A.6 are "express statutes" authorizing civil lawsuits against law enforcement officers violating those statutes, the court did not address prior Iowa Supreme Court precedent interpreting similar language contained in Iowa Code § 321.231(6), as constituting "an express statute dealing with claims regarding emergency response vehicles." *McClellan v. Ramirez*, 2019 Iowa App. LEXIS 543, *6-7, 928 N.W.2d 894, 2019 WL 2375244, Application for Further Review Denied by the Iowa Supreme Court, Case No. 18-1974, filed 7/31/2019 ("After consideration by this court, *en banc*, further review of the above-captioned case is denied.").

The issue presented in Plaintiffs violation of an express statute claim, as set out by the U.S. Supreme Court in *Castle Rock v. Gonzales*, 545 U.S. 748 (2005), is – did the restraining order establish a duty owed to Angela Prichard by the Defendants? The *Castle Rock* court answered that question in the negative based upon language of the Colorado restraining order statute. The Iowa restraining order contains almost the precise language the U.S. Supreme Court found lacking in *Castle Rock*.

Iowa Code § 321.231(6) provides, "[t]he provisions of this section shall not relieve the driver of an authorized emergency vehicle… from the duty to drive… with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of the driver's or rider's reckless disregard for the safety of others." The Iowa Supreme Court held "the legal standard of care applicable to the conduct of a… driver of an authorized emergency vehicle under Iowa Code section 321.231 is to drive with due regard for the safety of all persons, but the threshold for recovery for violation of that duty is recklessness." *Hoffert v. Luze*, 578 N.W.2d 681, 685 (Iowa1998). The Iowa Supreme Court authorized civil actions for reckless driving of an emergency response vehicle even though the language of Iowa Code § 321.231(6) states nothing about "bringing a civil action." *Id*. In *Penny v. City of Winterset*, 999 N.W.2d 650, 653 (Iowa 2023), the Iowa Supreme Court held, "'[a]n emergency vehicle operator who harms another person by driving with reckless disregard for the safety of others thus may be held liable for civil damages.' [Citing] *Martinez v. State*, 986 N.W.2d 121, 124 (Iowa 2023) (citing *Morris v. Leaf*, 534 N.W.2d 388, 390-91 (Iowa 1995))."

At pages 27-28 of the Order, the Court cited other Iowa statutory provisions with language stating a person aggrieved by the proscribed criminal conduct may "bring a civil action." See Iowa Code § §708.7(7) and 714H.5(1). Clearly, as noted above, the Iowa Supreme Court has not required such precise language to find an "express statute" holding law enforcement officers accountable for wrongful, not criminal, conduct. *Id*. Both Iowa Code § §708.7(7) and 714H.5(1), allow civil remedies for violations of criminal statutes. Neither of the cited statutes deal with claims against government agents like I.C.A. § 321.231(6) and Iowa Code § § 236.11 and 664A.6.

4

*Burnett v. Smith*, 990 N.W.2d 289, 293 (Iowa 2023), overruled *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), but specifically authorized claims against law enforcement "recognized at common law at the time of the adoption of the Iowa Constitution, **or based upon an Iowa statute**, or the express terms of a provision of the Iowa Constitution." *Burnett* at 307. (Emphasis added). Iowa Code § 321.231(6) has been found by the Iowa Supreme Court to be an express statute applicable to law enforcement that allows them to be held civilly liable for violation of the statute. The language used in § 321.231(6), like the language of the restraining order statutes in this case, does not explicitly state that civil lawsuits are allowed, yet the language was found by the Iowa Supreme Court to support claims for civil damages against law enforcement officers for violation of the statute. *Hoffert* at 685, *Penny* at 653 and *McClellan* at *6-7.

The final concern with the Court's interpretation of the Iowa restraining order statutes is that it renders portions of the statutes meaningless. Both § § 236.11 and 664A.6, include language, "a peace officer is not civilly or criminally liable for actions pursuant to this section taken in good faith." If officers cannot be held civilly liable for conduct in violation of the statute, regardless of the level of their culpability, as held by this Court, then that language in the statutes is rendered meaningless. This interpretation violates a well-recognized Irule of statutory construction.

The Iowa Supreme Court held in *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 685, 2022 Iowa Sup. LEXIS 75, *35-36, that we "generally read legislation in a manner to avoid rendering portions of a statute superfluous or meaningless." In *Little v. Davis*, 974 N.W.2d 70, 2022 WL 1434657, at *4 (Iowa 2022), the Iowa Supreme court rejected an interpretation of the Iowa Trust Code in a way that would make other sections never

5

operable and relied on the "general rule of statutory construction" under which "we avoid an interpretation or application of a statute that renders other portions of the statute superfluous or meaningless."  This Court's decision interpreting § § 236.11 and 664A.6 to not allow the pursuit of civil damages against officers who willfully, wantonly and in bad faith refuse to comply with the restraining order law renders the civilly liable language of those statutes meaningless.

The Iowa Supreme court held, "[w]e derive legislative intent not just from the language of the statute, but also from its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." *Postell v. Am. Family Mut. Ins*. Co., 823 N.W.2d 35, 49 (Iowa 2012). The subject matter and intent of § 321.231(6) is in accord with the subject matter and intent of § § 236.11 and/or 664A.6, regulating law enforcement officer behavior, but also providing them immunity for all but egregious conduct.

Plaintiffs understand that the Court has likely already considered these arguments, rejected them and is not likely to change its mind.  The purpose of this motion is to convince the court that it would be better for the efficient administration of justice that the Iowa Supreme Court review and decide these issues of first impression under Iowa law, rather than the Eighth Circuit Court of Appeals.  In *Boggess v. City of Waterloo*, 2024 U.S. Dist. LEXIS 151994, *35-36, 2024 WL 3928889, a judge Strand recently held, as follows:

> The arguments and defenses related to plaintiffs' state law claims involve disputes over recent cases involving whether the Iowa Supreme Court would recognize such causes of actions and if so, whether certain immunities under Iowa law remain available. Given that all federal claims have been dismissed, I decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, which are better addressed by the Iowa courts. See *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (encouraging federal courts to exercise judicial restraint and avoid state law issues wherever possible

recognizing the necessity to provide "great deference and comity to state court forums to decide issues involving state law questions."). Plaintiffs' remaining state law claims will be remanded to state court.

*Boggess* at *36. This case was not removed to federal court therefore, the option of remand is not available. However, certifying the state law issues to the Iowa Supreme Court is available and would be the best use of judicial resources.

> II. **THE COURT'S RULING SHOULD BE REASSESSED IN LIGHT OF FEDERAL RULE OF CIVIL PROCEDURE 9(b) AND NEWLY DISCOVERED INFORMATION**

As the Eighth Circuit stated in *Braden v. Wal-Mart Stores*, Inc., 588 F.3d 585, 595 (8th Cir. 2009), "on a motion to dismiss, inferences are to be drawn in favor of the non-moving party. *Northstar Indus. v. Merrill Lynch & Co*., 576 F.3d 827, 832 (8th Cir. 2009). *Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice." In *Braden* the Eighth Circuit overruled a District Court's Rule 12(b)(6) dismissal of a complaint holding, as follows:

> Rule 8 does not, however, require a plaintiff to plead "specific facts" explaining precisely how the defendant's conduct was unlawful. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (*per curiam*). Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled "'give the defendant fair notice of what the claim is and the grounds upon which it rests,'"*id.* (quoting *Twombly*, 550 U.S. at 555) (alteration omitted), and "allow[] the court to draw the reasonable inference" that the plaintiff is entitled to relief. *Iqbal*, 129 S. Ct. at 1949.

*Braden* at 595. The bottom line is that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007).

Addressing the pleading requirements of Rule 8(a)(2), the majority in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009), noted that while *Twombly* did not require "detailed

7

Case 2:24-cv-01012-CJW-KEM    Document 33-1    Filed 10/29/24    Page 7 of 17

factual allegations," it did require more than a "defendant-unlawfully-harmed-me accusation." A well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard is not a requirement of probability, but it is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). Plaintiffs' complaint was as factually detailed as possible given the information available since the client is deceased and the Defendants are the only ones who know exactly what they did and why they did it.

The court should reassess its ruling regarding the sufficiency of facts pled in the complaint in light of Fed. R. Civ. Pr. R. 9(b) allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." The Court rejected all the numerous allegations of special treatment by Defendants of Christopher Prichard by compressing them all into one allegation and dismissing it in a footnote. Order at 3, fn 1, "Plaintiffs do not provide any facts that would show a personal relationship between Christopher and defendants except a vague assertion that Christopher "performed electrical services for at least some of the Defendants on a reduced fee or free basis." (Doc. 1, at 12)." However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Iqbal* at 1954-55 (2009) (Souter, J., dissenting) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

The Court is concerned about many allegations in the complaint being based upon what the Defendants failed to do, rather than affirmative action they took. However, the complaint was replete with allegations of special treatment of Christopher Prichard by the Defendants. Special treatment is affirmative conduct. A critical distinction exists between

8

failing to perform a required act and actively refusing to do so. Failure to act constitutes an omission, while refusal is affirmative conduct. Refusing to arrest an individual you do not know, even when probable cause exists for a restraining order violation, constitutes a failure to act. In contrast, refusing to arrest someone with whom you have a personal relationship, despite clear probable cause for the violation, reflects affirmative conduct. Excusing Christopher Prichard's repeated violation of the restraining order and refusing to enforce the arrest warrant, is affirmative conduct based upon favoritism, *e.g.* we will tell him to "cut that out" and "it's a small town, your will have [violations of the protective order]." See ¶ ¶ 29 and 97.

The Court's division of allegations of special treatment into incidents that could have involved violations of the protective order and ones that occurred prior to the protective order being entered, while relevant on the state law express statute claim, does not make a difference regarding the overall allegation that Christopher Prichard received affirmative special treatment from the Bellevue police. *Iqbal* supports the plausibility of a claim of discriminatory intent that includes allegations of discrimination from before the detainees were categorized as "of high interest." *Iqbal*, 129 S. Ct. at 1951-52. In this case, whatever Christopher Prichard's relationship was with the Defendants, it afforded him special treatment both before and after the entry of protective order.

The Court noted, but did not consider in its analysis, dozens[1] of specifically pleaded factual allegations that Christopher Prichard received special treatment from the

---

[1] All of the following complaints were provided to the Defendants at the time they occurred, as alleged in the complaint. See ¶ 11 of the complaint alleging the Defendants showed favoritism toward Christopher Prichard ["CP"] which enabled and fostered his ability to murder his estranged spouse; ¶ 16 Angela Prichard found a tracking device in her vehicle and hidden cameras in her home in violation of Iowa law and the Defendants did nothing;

9

¶ 17 on 8/23/22 CP sent threatening texts to Angela and the Defendants did nothing; ¶ 18 on 8/28/22 CP threatened Angela's business and the Defendants did nothing; ¶ 19 on 8/29/22 CP falsely accused Angela of throwing a bottle at him and the Defendants did nothing; ¶ ¶ 24 and 25, on 9-2-22 Angela was escorted to her house, which was to be in her possession pursuant to the TRO, by Bellevue PD, found the home vandalized and utilities cut off so that she could not live there and Defendants did nothing; ¶ on 9/7/22 CP violated the TRO by going to her place of employment and the Defendants did nothing; ¶ 29 on an unspecified date after the TRO was in place CP pulled into a gas station next to Angela, stared at her and the Defendants did more than just nothing, they made excuses for CP, "it's a small town, you will have that;" ¶ 30 on 9-9-22 CP drove by Angela's house then started stalking her pregnant daughter-in-law and the Defendants did nothing; ¶ 33 on 9/12/22 CP went to Angela's house and the Defendants did nothing; ¶ 34 on 9/13/22 Angela provided Defendants with text messages from CP and the Defendants did nothing; ¶ 35 on 9/14/2022 CP told Defendants Angela had a boyfriend and the Defendants did nothing to determine how CP arrived at this unsupported claim; ¶ 36 on 9/15/22 CP left a note on the steps of Angela's home and the Defendants once again did more than just nothing, they made excuses for CP's violations of the TRO, telling Angela, "you can't prove it" was CP; ¶ 36 on the same date, 9/15/22, Defendants finally arrest CP for texting Angela, but only after being informed that they have to because it is a "mandatory arrest;" ¶ 40 and 42 while the TRO was in place prohibiting CP from "contacting, abusing or harassing" Angela, CP made derogatory comments about Angela by placing signs in the window of his business on a main street in downtown Bellevue, the Defendants were aware of the signs and did nothing; ¶ 43 one of the Defendants told Angela they would talk to the County Attorney about getting a restraining order regarding the signs when such a restraining order was already in place; ¶ 44 on 9/17/22 CP was parked by the place Angela was staying and the Defendants did nothing; ¶ 44 also on 9/17/22 Defendant Mutzl witnessed the unique black Jeep Cherokee with vanity "0dark30" license plates drive by where Angela was staying and did nothing claiming she could not tell for sure if CP was driving; ¶ 45 on the same date CP was spotted spying on the house where Angela was staying and the Defendants did nothing despite at least two calls for help from Angela; ¶ 46 on 9/19/22 Angela took pictures of the harassing signs in CP's shop on a main street in Bellevue, gave them to the Defendants and they did nothing; ¶ 47 on 9-23-22 Defendant Mutzl acted as a personal concierge for CP by personally reminding him of his court date; ¶ 49 also on 9-23-22 CP violated the RTO by showing up where Angela was staying and telling others there that he "did not give a fuck if he went to jail;" ¶ 51 on 9/30/22 failed to turn himself in for violating the TRO knowing the Defendants would not enforce the order by arresting him; ¶ 53 Despite knowing CP's whereabouts in a small town and the unique vehicle he drove, the Defendants made no effort whatsoever to execute on the arrest warrant issued for violating the TRO for nine full days; ¶ 54 on 10-1-22 Defendant Shroeder tells Angela not to move back into her house because CP was going to hurt her and/or himself; ¶ 56 on 10/9/22, after killing Angela, CP was easily located at the home of a known associate of his; ¶ CP performed electoral services for the Defendants for free or on a reduced fee basis; ¶ 69 CP was well known to the Defendants and CP believed the Defendants would not hold him accountable for wrongful conduct; ¶ 72 Rather than arrest CP for violating the restraining order the Defendants instead told CP to "cut it out."

Defendants. Plaintiffs do not yet know, and may never know, precisely WHY the Defendants violated their oaths of office (another affirmative act), provided special treatment to a person out on bail for felony theft who repeatedly harassed his estranged spouse and her family, knowing he was likely to seriously injure or kill her, but Plaintiffs allegations, if accepted, clearly establish such special treatment.

Per Magistrate's Order, discovery continued while the Motion to Dismiss was pending. Doc. 15, filed 5/2/2024. The below additional information was obtained as part of discovery during September and October of 2024, after Plaintiffs' pleadings resisting the Motion to Dismiss were filed on July 26, 2024. See R. Doc. 24. Rule 59(e) allows for altering or amending a ruling based upon newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). All these new allegations are contained in Plaintiffs' Proposed Amended and Substituted Complaint attached to the Motion to Alter or Amend Judgment.

Plaintiffs have an expert report from a law enforcement officer with over 40 years of experience enforcing restraining orders and training other officers to do the same, in the State of Iowa. Retired Captain and former Acting Police Chief of the Waterloo Iowa Police Department, John Beckman, opined, as follows:

> After the new domestic abuse laws were enacted in the mid-1980s, Iowa law enforcement officers received training at that time, and in subsequent training sessions throughout the years, addressing officers failing to enforce restraining orders and potentially being held civilly or criminally liable for acting in bad faith, willfully and wantonly disregarding the rights or safety of another person, as found in Chapter 236.11(4). There was a great deal of emphasis placed on this part of the Code.

Proposed Amended and Substituted Complaint ¶ 66. Therefore, the Court's ruling interpreting I.C.A. § 236.11, as not allowing civil remedies for failing to enforce restraining orders in bad faith, and willfully and wantonly disregarding the rights or safety of another

person, is not consistent with training objectively reasonable law enforcement officers have been receiving in the State of Iowa. Proposed Amended and Substituted Complaint ¶ 66.

In responding to admissions requests the defendants made a number of false statements about their relationship with Christopher Prichard. Proposed Amended and Substituted Complaint ¶ 68. Defendants served a supplemental response to Requests to Admit on September 12, 2024, just seven weeks ago. Proposed Amended and Substituted Complaint ¶ 69. In those responses Defendants Schroeder and Mutzl denied using the services of Mississippi Ridge Kennel, owned by Christopher and Angela Prichard. Both Schroeder and Mutzl also denied being provided services at the kennel on a reduced fee basis. Proposed Amended and Substituted Complaint ¶ 70. Plaintiffs have uncovered receipts from Mississippi Ridge Kennel establishing that both Schroeder and Mutzl used the kennel, both received favorable pricing for the services and that Mutzl actually had her pet at the kennel the week before Angela's death, picking her pet up AT THE KENNELL THE NIGHT BEFORE THE MURDER. Proposed Amended and Substituted Complaint ¶¶ 71 and 72. It is hard to believe that a anyone would forget being at the scene of a murder the night before the murder occurred.

In responding to Request for Admissions 68 through 76 the Defendants denied making no effort or minimal effort to locate and arrest Christopher Prichard on the arrest warrant issued the week before Angela's death. Proposed Amended and Substituted Complaint ¶ 73. However, when asked to provide any documentation whatsoever, reports, records, notes, call sheets, logs, anything showing an effort to arrest Chirstopher Prichard between September 30 and October 8 of 2022, the Defendants conceded, "[b]eyond records

prepared for litigation and provided to counsel, no such responsive materials exist." Proposed Amended and Substituted Complaint, ¶ 74.

If the Defendants had not acted as protectors of Christopher Prichard, showing him favoritism, then he would have been in jail at the time he murdered Angela Prichard. Angela certainly would not have been murdered on October 8, 2022. Whether she would have been murdered by Christopher Prichard at a later date is unknown and a fact question to be decided by a jury, not a dispute to be decided by the court on a motion to dismiss. The Court recognized as much:

> The Court remains skeptical that more aggressive conduct by the officers would have changed anything. Plaintiffs speculate that, had the officers arrested Christopher more often, it would have prevented Angela's murder. Arguably, one could equally speculate that it was the officers' arrest of Christopher for violating the no-contact order that angered him enough to kill Angela.

Order at 26, fn 13.

The Defendants were asked to provide all records of their activities the week before Angela Prichard was murdered while the arrest warrant for Christopher Prichard was outstanding. Proposed Amended and Substituted Complaint ¶ 75. The purpose of the request was to determine what kept the Defendants from documenting any effort to arrest a person out on bail on felony theft, who repeatedly violated a restraining order protecting his estranged spouse, that they knew was likely to kill or seriously injure her and who lived in town and drove an easily recognizable vehicle with vanity plates. Proposed Amended and Substituted Complaint ¶ 76. Less than seven weeks ago the Defendants provided documentation of the following in total police activities for the week:

1. Responding to a slip and fall at a nursing home;
2. Escorting a large vehicle through town;

3. Chaperoning the high school homecoming dance;

4. Conducting 2 school patrols;

5. Conducting 5 traffic stops;

6. 1 act of Community policing/PR activities;

7. 2 Funeral escorts;

8. Investigating a complaint of a growling dog;

9. Investigating a complaint that "a raccoon looks sick walking around;"

10. Monitoring a suicide threat out of Maquoketa/Dubuque;

11. Responding to a call that "trees and wires down;"

12. 1 Traffic stop for a window tint violation; and

13. Helping a motorist who locked keys in their car.

See Proposed Amended and Substituted Complaint, ¶ 77.

Defendant Schroeder was asked to admit that he was concerned Christopher Prichard was "going to hurt her and/or himself." Proposed Amended and Substituted Complaint ¶ 78 The request was denied. *Id*. Plaintiffs have Schroeder on video tape stating these exact words to Angela Prichard, "[t]hat's my biggest fear. That's my department's biggest fear is he's going to try to hurt you and then hurt himself." Proposed Amended and Substituted Complaint, ¶ 55.

Defendant Schroeder was asked to admit that he had a personal relationship with Christopher Prichard. Proposed Amended and Substituted Complaint ¶ 78. That request was denied. *Id*. As part of discovery in this case, on the day Christopher Prichard was supposed to turn himself in to serve the jail sentence for violating the restraining order, Defendant Schroeder logged an entry stating,

14

> 10-43
>
> ANGELA DROPPED OFF SOME MAIL FOR CHRIS PRICHARD. I DROVE BY HIS SHOP A FEW TIMES AND COULD NOT LOCATE HIM. HE WAS ORDERED TO TURN HIMSELF INTO THE J.C.S.O. TODAY AT 1400HRS. IF THAT IS THE CASE, WE CAN SEND HIS MAIL WITH A DEPUTY TO GIVE TO CHRIS. 49-21 ON GOING.

Proposed Amended and Substituted Complaint ¶ 80.

Later that day Defendant Schroeder followed up with this log entry,

> 10-43
>
> I CALLED THE JAIL AND THEY KNOW NOTHING ABOUT CHRIS COMING IN TODAY AT 1400HRS. I ADVISED THAT THEY CALL THE PD IF CHRIS SHOWS UP AND WE WOULD HAVE A DEPUTY 10-5 CHIS' MAIL OVER TO HIM AT THE JAIL.

Proposed Amended and Substituted Complaint ¶ 81.

The day Christopher Prichard was supposed to show up to serve the jail sentence, Defendant Schroeder was worried about getting mail to him, not making sure the arrest warrant was enforced. Proposed Amended and Substituted Complaint ¶ 82. Christopher Prichard was out on bail on felony theft, with the departments biggest worry being that he may hurt Angela or himself, supposed to, but failed to, turn himself in for a jail sentence, and the Defendant Chief of Police is worried about his mail getting delivered, not locating him and executing the arrest warrant. Proposed Amended and Substituted Complaint, ¶ 83.

A reasonable inference that can be drawn from the Defendants' repeated lies and obfuscations about their relationship with Christopher Prichard is because they know they gave him special treatment and do not want to be held accountable for their wrongful conduct.

If the Court needs any additional evidence to support the claim that the Defendants acted to protect their friend, Christopher Prichard, rather than enforce Iowa law, Plaintiffs are at a loss trying to even imagine what evidence, short of an admission by the defense,

15

Case 2:24-cv-01012-CJW-KEM    Document 33-1    Filed 10/29/24    Page 15 of 17

that it would take to just allege sufficient facts of favoritism in their pleadings. This is particularly true in light of Rule 9(b) allowing that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

## CONCLUSION

Plaintiff requests the Court to Alter or Amend the Memorandum Opinion and Order (R. Doc. 31) and Judgment (R. Doc. 32), both issued on October 21, 2024, to send certified questions regarding Iowa law on County II, the Violation of an Express Statue claim to the Iowa Supreme court; to reassess its Order on Count I, Due Process violation in light of Rule 9(b) and the newly discovered information, as set out in the Proposed Amended and Substituted Complaint; and to grant their Motion for Leave to File the Proposed Amended and Substituted Complaint.

Respectfully submitted,

/s/ David A. O'Brien
David A. O'Brien, AT0005870
Dave O'Brien Law
500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

Trial Lawyers for Justice
421 W Water Street
Decorah, Iowa 52101
Telephone: (307) 267-9432
Email: jakob@tl4j.com

By: /s/ Jakob Z. Norman
JAKOB S. NORMAN, Pro Hac Vice

Trial Lawyers for Justice
421 W Water Street
Decorah, Iowa 52101
Telephone: (319) 550-0842

Email: ansley@tl4j.com

By: /s/ Ansley H. O'Brien
ANSLEY H. O'BRIEN, Pro Hac Vice
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

/s/Julia Daugherty
Julia Daugherty